# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

JOE MILLS,

    Plaintiff,

vs.   CASE NO. 1:04CV401-MMP/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.     **PROCEDURAL HISTORY**

Plaintiff filed applications for benefits on November 9, 1999, alleging a disability onset date of November 5, 1999, because of a compressed disc in his back with post surgical defect, sacroiliac joint dysfunction, depression, anxiety and low back pain with radiation to lower buttock and leg.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on May 8, 2002, and entered an unfavorable decision on October 25, 2002.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had severe impairments, lumbosacral disease and depressive disorder, but that these impairments were not severe enough to meet the Listings of Impairments. (R. 15).  The ALJ found that his testimony was not credible in that his subjective complaints were exaggerated in comparison with the objective medical tests and clinical findings.  (R. 18).  The ALJ found Plaintiff able to lift up to 20 pounds, 10 pounds frequently; sit for 8 hours; stand for 2 hours, 30 minutes at a time; walk for 2 hours, 100 yards at a time; no climbing ladders, torso lifting, or frequent bending, stooping, or squatting, but occasionally capable of climbing stairs and requiring a sit/stand option.  (R. 18).  The ALJ also found Plaintiff limited to unskilled work requiring no more social interaction beyond a couple of words.  (R. 18).  This assessment was based on the report of Dr. Puente-Guzman and the mental limitations

**No. 1:02CV125-SPM/AK**

established by the record.  These capacity evaluations preclude Plaintiff from performing his past relevant work.  The ALJ found that Plaintiff had non-exertional limitations requiring the assessment of a vocational expert, who concluded that a number of jobs exist in the national economy which Plaintiff could perform such as a surveillance monitor, a ticket seller, and a parking lot attendant.  (R. 19).

## C.  ISSUES PRESENTED

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Ramon Pino, his treating physician, who found Plaintiff limited to marked and extreme degrees in a number of categories.  Plaintiff contends that the ALJ did not explain why she rejected Dr. Pino's opinion, except to state in general terms that it was not supported by the record.  Instead the ALJ adopted the opinion of Dr. Puente-Guzman, an orthopedic doctor, as to Plaintiff's mental limitations.  Plaintiff also argues that the ALJ erred in not posing all of his limitations in a hypothetical to the vocational expert.  Plaintiff contends that although the ALJ found Plaintiff to have lumbosacral disease and depression, he did not include this combination of impairments in his hypothetical.

The government responds that the ALJ may reject the opinion of a treating physician for good cause, and here Dr. Pino did not support his opinion with examination or test results.  He checked a mental status questionnaire submitted to him by Plaintiff's attorney.  The ALJ also noted that Plaintiff had discontinued medications prescribed by Dr. Pino and reported no continued problems with depression.  Dr. Amiel also found no extreme symptomology during his examination.  Further, since Dr. Pino's

**No. 1:02CV125-SPM/AK**

Page 4 of 17

extreme limitations were associated or resulting from "chronic pain," it was appropriate for Dr. Puente-Guzman, who treats Plaintiff for his pain, to render an opinion about the effect of the pain on his mental abilities.  Dr. Puente-Guzman had also prescribed anti-depressants for treatment of Plaintiff's mental condition.  Also noted by Dr. Pino, but not addressed in his assessment, is the apparent drug abuse, including marijuana and narcotic medications, that would interfere with Plaintiff's treatment.  Further, contrary to Plaintiff's argument about the hypothetical, the ALJ posed all of Plaintiff's physical limitations, as supported by the record, as well as a mental limitation, such as being limited to social interaction requiring no more than a few words.  The ALJ was not required to include in the hypothetical limitations he found to be unsupported by the record.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.   STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant

**No. 1:02CV125-SPM/AK**

evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant

**No. 1:02CV125-SPM/AK**

is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:02CV125-SPM/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

### E.  SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Dr. Salgado began treating Plaintiff after his fall in January 1999, when he fell from a ladder and landed on his rear end. (R. 123-125). A MRI taken in February 1999 showed "minimal degenerative changes," and was "otherwise unremarkable." Plaintiff told Dr. Salgado that was being treated by Dr. Pino for depression, but that he had quit taking the medication prescribed by Dr. Pino because he was afraid of mixing it with his pain medication and "has had no recurrent problems with depression." (R. 123). Dr. Salgado's impression was that maximum medical improvement had not been reached, and Plaintiff should restrict himself to sedentary work with allowance for frequent positions changes and no excessive bending or squatting. (R. 125). Nerve studies were normal. (R. 122). His last note dated May 18, 1999, placed no work restrictions on Plaintiff. (R. 121).

Dr. Salgado referred Plaintiff to Dr. Puente Guzman on May 12, 1999. (R. 162). While awaiting prior lab films for review, Dr. Guzman placed Plaintiff on sedentary, light level activity with no climbing or repetitive bending, stooping, squatting or lifting of heavy objects. (R. 164). Plaintiff asked about working as a security guard and Dr. Guzman recommended this work, done at a light level of activity, with the ability to change positions. (R. 159). Plaintiff reached maximum medical improvement in November 1999, at which time he reported working full time with light duty restrictions. (R. 152).

**No. 1:02CV125-SPM/AK**

At an examination on December 6, 1999, Plaintiff reported losing this job. (R. 150). Physical therapy reported to Dr. Guzman that Plaintiff could perform at a medium level of activity and with continued therapy could possibly perform to a medium/heavy work level. (R. 150). Dr. Guzman released him to permanent full time moderate level activity. (R. 150). His records include a physical assessment that found him to have normal gait, normal strength, with the ability to squat, walk on heels, and walk on toes. (R. 140). An MRI taken on March 28, 2000, was unchanged from the MRI taken in February 1999 following his fall from the ladder. (R. 141). It was "status post left sided laminotomy L5/S1 with no evidence for new disk protrusion or focal nerve root compression." (R. 141).

Later notes show that Dr. Guzman considered him to have reached maximum medical improvement on November 1, 1999, with a permanent impairment rating of "7% whole person." (R. 236-268). Dr. Guzman was prescribing Zoloft for treatment of Plaintiff's depression based on the diagnosis of Dr. Amiel. He also prescribed a course of chiropractic treatment, home exercise and continued use of a TENS unit. He was also told to "continue with full-time, light level activity...." (R. 264). A treatment note of August 1, 2001, stated "continue with full-time, sedentary to light-duty restriction. The patient cannot return to his previous job and should follow up with Voc Rehab if ineligible for SSDI." (R. 237). On August 31, 2001, Plaintiff brought a recent MRI that showed "mild disc bulge at L5-S1 with suspected impingement on the right L5 nerve root." (R. 358). Dr. Guzman discussed surgical or nerve block treatments, which

**No. 1:02CV125-SPM/AK**

Plaintiff declined. (R. 358). By the next visit on September 28, 2001, Plaintiff requested a surgical evaluation and was referred for one. (R. 356). At his visit on October 19, 2001, he was advised that no narcotics would be dispensed by Dr. Guzman because of a positive urine screen for marijuana and other drug use. (R. 350-354). Interestingly, at the visit of November 9, 2001, Plaintiff reported no change in his condition although he was taking no pain or other medication for his back. (R. 348-349). At his last visit with Dr. Guzman on March 18, 2002, it was reported that the pain clinic he was referred to would not take him and there was no word on the surgery, but he continued to smoke marijuana and would receive no narcotics from Dr. Guzman. (R. 340). Dr. Guzman completed a pain assessment form for Plaintiff's attorney on July 1, 2002, which indicated that in his opinion Plaintiff had a somatogenic and psychogenic component of pain, with recurrent, not continuous, features, with depression, and pain levels which varied from mild to extreme based on Plaintiff's subjective reports. (R. 381-384). He assessed him as mildly restricted to full time sedentary to light duty. (R. 385-386).

Dr. Ramon Pino began treating Plaintiff when he was admitted to Shands Hospital on August 31,1998, for depression and suicidal ideation. (R. 100-104). His condition at discharge was "depression...under control...prognosis overall is excellent." (R. 104). He gave him a psychiatric impairment rating of 12% on May 23, 2001. (R. 329). He completed a Mental Residual Functional Capacity Assessment on September 5, 2001, finding that Plaintiff had marked limitation in his ability to carry out detailed instructions and extreme limitations in the following areas: ability to concentrate,

**No. 1:02CV125-SPM/AK**

perform on a schedule, work with others, complete a normal work week, interact with the public, respond appropriately to supervisors, get along with co-workers, maintain appropriate social behavior, respond appropriately to changes in the work setting, and the ability to travel in unfamiliar places. (R. 324-326).

Dr. Michael Amiel examined Plaintiff on March 13, 2000, and found him to have depressive disorder, marijuana abuse, and alcohol dependency by history. (R. 138). Plaintiff was to have follow up individual therapy, some lab work, and possible psychotropic medication. (R. 138).

Treatment notes of Paula Lovett, PhD, show frequent discussions during therapy sessions of pain and anger management. (R. 186-193). Her evaluation found him to have a depressive disorder and a pain disorder, described as "when both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation or maintenance of pain." (R. 191). She counseled him during an involuntary hospitalization for suicidal ideations and emotional outbursts, which he attributed to pain. (R. 269). Plaintiff reported to her that his pain level had increased subsequent to the discontinuation of narcotics by Dr. Puente-Guzman and he failed to take responsibility with her for his part in this problem. (R. 365).

Records of this admission on July 27, 2001, indicate that Plaintiff had verbalized a plan of suicide to his wife who had him transported to the emergency room. (R. 285-295). He was treated and released the next day. (R. 314).

**No. 1:02CV125-SPM/AK**

Plaintiff was also brought to the emergency room following a fall on July 1, 2001. (R. 295). There are no other records of this visit in the file.

A vocational rehabilitation report prepared for Dr. Puente dated April 12, 2001, found Plaintiff capable of working at the sedentary and light level of activity, which did not comport with his prior work activity as a gutter installer. (R. 221). This assessment was based on an *incredibly* extensive examination. (R. 221-235).

A number of physical and mental capacity assessments were completed by reviewing, non-examining physicians. A physical RFC dated June 28, 2000, assessed him as capable of lifting 20 pounds occasionally, 10 pounds frequently, sitting, standing or walking six hours a day, with postural limitations. (R. 178-185). A later physical RFC dated October 17, 2000, was the same. (R. 194-201).

A Psychiatric Review with accompanying Mental Residual Functional Capacity Assessment dated June 19, 2000, found Plaintiff to have depressive disorder, with chronic pain syndrome, with deficits noted in persistence or pace and moderate limitations noted in the ability to carry out detailed instructions and to perform activities within a schedule. (R. 165-178). A mental evaluation with review form dated October 17, 2000, found only a few moderate limitations. (R. 202-220).

F.      **SUMMARY OF THE ADMINISTRATIVE HEARING HELD ON MAY 8, 2002**

Plaintiff was 35 years old at the time of the hearing with a GED, who last worked in October 1999. (R. 419-420). His last job as security officer involved patrolling an apartment complex, with no lifting. (R. 421). His job before that was installing gutters

**No. 1:02CV125-SPM/AK**

and involved lifting 70 to 80 pounds during the day.  (R. 421).  He quit that job when he got hurt.  Before that he worked as an upholster for about six months and quit because he got tired.  (R. 422).  He worked as a corrections officer for about 3 years prior to that, but quit because he could not keep up with policy changes.  (R. 423).  He can no longer work because of his depression and back pain.  (R. 424).  At the time of the hearing he had still not seen a surgeon.  (R. 424).  He claims to have a new doctor, Dr. Valentine, who is currently treating him with injections.  (R. 426). [There are no treatment records from this medical source in the record].  He also sees Dr. Pino for medication for his depression and a psychologist, Dr. Houseberg [who appears to be in association with Dr. Lovett].  (R. 427).  He claims to have pain on a level 7 on a scale from one to ten completely unrelieved by pain medication.  (R. 432-433).  When asked what his limitations were he responded that could sit two hours, but would need to get up and walk around for 15 to 30 minutes, he can stand for about 30 minutes, and walk 100 yards, he can lift only 10 pounds, and has difficulty getting along with people and concentrating.  (R. 428).  He can follow instructions.  (R. 428).

The vocational expert was given a hypothetical to include a younger individual, with a GED, who could lift a maximum of 20 pounds, sit for eight hours, stand for two hours, thirty minutes at a time, walk two hours, 100 yards at a time, no climbing or torso lifting, no repetitive stooping, bending, or squatting, but occasionally able to climb stairs, with the ability to alternate sitting and standing, unskilled work, with no social interaction

**No. 1:02CV125-SPM/AK**

beyond a few words. (R. 436-437). The expert identified a number of jobs which Plaintiff can perform.

**G.     DISCUSSION**

    a)     Treating Physician

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law.

**No. 1:02CV125-SPM/AK**

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

In the present case, Plaintiff has a number of treating physicians. He sought treatment from Drs. Salgado and Puente-Guzman for his back, and from Drs. Pino, Amiel, and Lovett for his mental condition. Plaintiff complains that the ALJ accepted the opinion of Dr. Puente-Guzman over that of Dr. Pino without adequate explanation. Specifically, Plaintiff asserts that the ALJ should accept the form assessment completed by Dr. Pino finding extreme limitations in a number of areas, which Dr. Pino completed for Plaintiff's attorney.

Contrary to Plaintiff's argument, the ALJ explained that the extreme limitations found by Dr. Pino were not supported by his treatment notes or the fact that Plaintiff took no psychotropic medication since April 1999, without recurrent problems. (R. 17). The ALJ found Dr. Puente-Guzman's assessment more accurate since Dr. Pino's extreme limitations are contrary to other assessments made around the same time which found Plaintiff able to work at sedentary jobs. (R. 17). The undersigned also notes that Dr. Puente-Guzman addressed a number of Plaintiff's problems and their interaction and affect upon his treatment, including his depression, drug abuse, continued excessive smoking, and his back condition. He used a number of objective tests to reach his conclusions, including MRI and blood tests, and referred Plaintiff for psychological counseling with Dr. Lovett and vocational rehabilitation. Dr. Pino did not address a number of Plaintiff's problems, although he noted them, and did not engage

**No. 1:02CV125-SPM/AK**

in counseling or other therapy beyond drug therapy such as Zoloft, Buspar, and Remeron, which he prescribed for Plaintiff's depression. Dr. Pino's treatment goals were to prevent recurrence of the suicidal event which brought him to Dr. Pino's attention in the first place. Thus, the ALJ's reliance on the assessment of Dr. Puente-Guzman over the assessment form completed by Dr. Pino is explained in the record and supported by the evidence.

The undersigned also notes that the vocational assessment conducted on April 12, 2001, was extremely comprehensive and at no time concluded that Plaintiff was unable to work. Even Plaintiff does not describe himself as so extremely limited as Dr. Pino does, stating at the hearing that he had some difficulty getting along with others and concentrating, but could study for two hours with breaks every 15 minutes. In fact Plaintiff's self-described limitations are almost precisely what the ALJ found. (See R. 428). These limitations were also noted by several non-examining physicians and are found in the record. Thus, the ALJ had ample support for not adopting the capacity assessment and limitations of Dr. Pino.

  b)  <u>Hypothetical to Vocational expert</u>

At the fifth step of the evaluation process, the ALJ must determine whether a person, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1239

**No. 1:02CV125-SPM/AK**

(11th Cir. 2004).  When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  Phillips, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Plaintiff's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

While Plaintiff argues that the ALJ did not include the combination of his back pain and depression in the hypothetical, a review of the testimony at the hearing shows that the ALJ did include the limitations caused by his back in lifting and postural limitations, as well as concentration and social limitations caused by his depression such as unskilled work only and no real social contact.  Plaintiff does not specify what precisely he contends was not included in the hypothetical, but these were the only two impairments that the ALJ found severe.  The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be AFFIRMED.

At Gainesville, Florida, this 8th day of February, 2006.


             s/A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**No. 1:02CV125-SPM/AK**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:02CV125-SPM/AK**